IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAUN O.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 6:19-cv-01465-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Shaun O. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title XVI Social Security Income and Title II Disability and Child's Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in October 1992, plaintiff alleges disability beginning September 1, 2013, due to migraines, bipolar disorder, depression, anxiety, and attention deficit/hyperactivity disorder ("ADHD"). Tr. 253-62, 289. His applications were denied initially and upon reconsideration. Tr. 176-89, 195-203. On May 24, 2018, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 35-74. On August 15, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-28. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ determined plaintiff's social anxiety, bipolar II, ADHD, and migraines were medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19-20.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a full range of work at all exertional levels except:

> [He] is limited to no climbing of ladders or scaffolds and no exposure to hazards such as unprotected heights. He is limited to simple routine tasks consistent with a reasoning level of two and unskilled work as defined by the Dictionary of Occupational Titles. He is limited to superficial interaction with coworkers and the public (defined as brief and perfunctory).

Tr. 21.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 26. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as cleaner, battery stacker, and hand packager. Tr. 27.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting his subjective symptom statements; (2) ignoring one of three third-party statements from his grandmother, Cheri N.; (3) rejecting the medical opinions of Jason Quiring, Ph.D.,[2] Scott Alvord, Ph.D., and counselor Brian Hickey; and (4) failing to include all of his limitations in the RFC, thereby rendering an invalid step five finding.

## I.    Plaintiff's Testimony

Plaintiff asserts the ALJ erred by discrediting his subjective symptom testimony concerning the extent of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be

---

[2] Both the parties refer to Dr. Quiring as an acceptable medical source. Pl.'s Opening Br. 4 (doc. 15); Def.'s Resp. Br. 5-6 (doc. 16). Yet the record reflects that Dr. Quiring is not a medical doctor or even necessarily a mental health specialist; his only credential – a Ph.D. – emanates from a "Doctorate [in] Philosophy." Tr. 709-14, 729-33. The Court therefore treats Dr. Quiring as a non-acceptable medical source based on the regulations in place at the time of plaintiff's applications. As addressed in greater detail below, irrespective of Dr. Quiring's status, the ALJ did not err in regard to his opinion.

Page 3 – OPINION AND ORDER

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that he is unable to work due to his social anxiety, "which can pop up at any time." Tr. 56. When "bad" anxiety hits, plaintiff has to "sit down and put my head in my hands, because moving around, I just can't, can't think." Id. Plaintiff testified further that "[t]he bad anxiety attacks [are] random": occurring on average about once per week, "but it can be multiple time a week [or] multiple times a day." Id. These attacks last "a couple of minutes [to] like half an hour," and "sometimes" plaintiff needs to lay down afterwards. Tr. 62. Plaintiff acknowledged ceasing counseling in September 2017, but explained he was grieving the death of various close family members. Tr. 45-46, 61. Plaintiff also endorsed chronic migraines, which "[m]ost of the time [n]ever go away," even with prescription mediation (i.e., Fioricet). Tr. 63-65.

In terms of daily activities, plaintiff testified that he does not socialize with friends, drive, or leave the house, and he rarely leaves his room, except to occasionally attend medical appointments or visit his grandmother. Tr. 55, 57-58, 60. Accordingly, plaintiff stated that he mostly spends his days sleeping, watching television, and playing video games. Tr. 51, 56. Regarding his daily marijuana habit, plaintiff reported that his providers are aware of his usage

and perceive it as "very beneficial." Tr. 49, 60. Plaintiff was on probation through approximately 2017 for a crime he committed while intoxicated in December 2013; however, plaintiff indicated that his probation officer did not violate him for drug use because "he thought I really needed it," even though plaintiff has never held a medical marijuana card. Tr. 47-50.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21-22.

Specifically, the ALJ found that plaintiff's noncompliance with his providers' treatment recommendations belied his hearing testimony. Tr. 22-26. An ALJ may discredit a claimant's testimony due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations and internal quotations omitted). Substantial evidence supports the ALJ's decision in the case at bar. While there is some evidence that plaintiff's failure to complete a sleep study was caused by anxiety, the record is nonetheless replete with examples of plaintiff's inadequately explained failures to follow prescribed courses of treatment. For instance, the record reveals that, despite endorsing debilitating anxiety, plaintiff did not consistently pursue therapy or comply with his providers' recommendations regarding lifestyle changes.

Notably, there is no evidence of any mental health treatment between the alleged onset date and the end of 2013. Plaintiff started counseling in January 2014 following his arrest for burglary and arson. Tr. 462-66. In September 2014, plaintiff's treating doctor, William Strek, M.D., advised that plaintiff continue with "both individual and group therapy," but plaintiff was "very resistant

to going" and "seem[ed] to have little insight into his anxiety." Tr. 552-53. That same month, plaintiff was discharged from therapy for "non compliance." Tr. 4667; see also Tr. 555-56 (Dr. Strek observing in October 2014 that plaintiff had "not [been] going [to counseling] for the past several months," had been "smoking marijuana heavily," and was "resistant to psychological techniques," even though he reported persistent anxiety).

Plaintiff sought a second opinion regarding his mental health symptoms in January 2015: following an evaluation, Joel Breen, D.O., instructed plaintiff that "the most helpful aspect of treatment" was therapy; Dr. Breen also "discussed [with plaintiff] that there is not a clear psychiatric indication for [marijuana and that it was] possible the cannabis is exacerbating" his symptoms. Tr. 558-60. Plaintiff then obtained regular counseling from licensed social worker Cara England from February 2015 through August 2016, at which point he reported some improvement in his anxiety symptoms. Tr. 565-691, 725-47. Thereafter, he sought counseling on approximately five occasions from various providers (i.e., Ms. England, Matthew Dilbeck, and Mr. Hickey). Tr. 757-59, 762, 765-78, 800, 815. After September 2017, there is no further indication of mental health treatment (beyond medication management), despite the fact that plaintiff repeatedly remarked that counseling was "very useful." See, e.g., Tr. 653, 705, 707, 736, 745.

Further, although plaintiff testified at the hearing that both his medical providers and probation officer supported, or at least condoned, his daily marijuana usage, the record is to the contrary. In fact, an independent review of the record does not reveal a single medical source that viewed plaintiff's cannabis use as beneficial. Additionally, on multiple occasions plaintiff reported to Ms. England that he was having anxiety surrounding not passing the urine analysis tests he was

required to take as part of his probation. Tr. 668, 672-73, 675, 682. Nevertheless, plaintiff "refus[ed] to stop using marijuana [even if it means] go[ing] to jail as a result."[3] Id.

Plaintiff has been given the same advice regarding lifestyle changes for years, but has consistently refused to follow it. See Tr. 443-45 (doctor denoting in March 2011 that plaintiff "has a tendency towards somatization and needs to improve lifestyle be eliminating his marijuana use, exercis[ing] regularly, eat[ing] properly, and keep[ing] his teeth in good hygiene"); Tr. 525-26 (Dr. Strek noting in April 2012 that plaintiff "abuses cannabis on a daily basis" and has been "advised and counseled again use of cannabis as of course, this will worsen any depression, weakness or fatigue"); see also Tr. 585, 669, 678, 703, 716-20, 782, 815 (medical providers instructing plaintiff during the adjudication period that his failure to eat properly, take medications as prescribed, exercise, and reduce his marijuana consumption were barriers to improvement); Tr. 682 (Ms. England observing in March 2016 that plaintiff "appears to be quite entrenched in a victim mentality, that he has absolutely no recourse to improve or change his situation").

Moreover, the record reflects that plaintiff did not seek treatment for his headaches until March 2015, well over one year after the alleged onset date. Tr. 577. The records that post-date this initial encounter reflect that plaintiff's severe migraines were intermittent and well-controlled with Fioricet, which he used sparingly. Tr. 608, 628, 653, 698-99, 703, 716-20, 782, 815; see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (symptoms that can be adequately controlled with treatment are not disabling) (internal citations omitted).

---

[3] Although plaintiff reported to his providers that marijuana "[h]elps with his anxiety, but not much," the record also intimates that plaintiff was reliant on this substance, irrespective of its putative benefits. Tr. 767, 815; see also Tr. 673 (Ms. England noting in February 2016 that plaintiff "continues to smoke marijuana [even though it could result in jail time] and does not feel it is possible to stop, as it is a coping strategy for him").

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. The ALJ's evaluation of the plaintiff's subject symptom testimony is affirmed.

## II.     Third-Party Testimony

Plaintiff contends the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to reject Cheri N.'s April 2018 third-party testimony. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

The record contains three third-party statements from Cheri N.: two from May 2016 and one from April 2018. Tr. 326-336, 375-79. Her first two statements – i.e., a "Third-Party Function Report" and narrative letter – are substantively similar; Cheri N. indicated that plaintiff has struggled with ADHD, depression, and social anxiety since a "young age." Tr. 326, 330. She explained that, over the last three years, plaintiff rarely leaves his room except to go to medical appointments and needs medications to cope. Tr. 326-29, 332-33. She also discussed plaintiff's arrest in December 2013, which was the result of plaintiff mixing alcohol and drugs while at a friend's house. Tr. 326. Finally, she described plaintiff's course of treatment and work history, and explained how situational stressors within his home exacerbate his symptoms. Tr. 327-35.

In April 2018, Cheri N. wrote another letter in support of plaintiff's claim. Tr. 375-79. In addition to reiterating the information from her two prior statements, she also provided details regarding plaintiff's sensitivities, difficult birth, and familial history of mental illness and substance abuse. Id. Cheri N. disputed plaintiff's diagnoses "of alcohol abuse and marijuana

abuse" because plaintiff "has drunk very little alcohol in his lifetime" and "uses [marijuana] for anxiety and not to get high." Tr. 377. According to plaintiff's grandmother, "[t]he psychiatrist that first gave this diagnosis is known for giving everyone that smokes marijuana in any amount for any reason that diagnosis," but "his subsequent provider was not concerned about him using it for anxiety." Id. She also disputed certain portions of the state agency consulting sources' opinions and concluded that, based on her "23 years of experience" providing transition services to mental health patients, plaintiff "is disabled." Tr. 375, 377-78.

The ALJ acknowledged Cheri N.'s "Third Party Function Report and letter" from May 2016 but found that "the extreme limitations in functioning that are described are not consistent with the evidence of record." Tr. 20. Plaintiff is correct, however, that the ALJ did not explicitly discuss or weigh Cheri N.'s April 2018 letter. Yet the Court finds, to the extent the ALJ implicitly rejected this report, such an error was harmless. See Molina, 674 F.3d at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Significantly, the ALJ appropriately rejected the analogous third-party statements from plaintiff's grandmother, and plaintiff does not now challenge that finding on appeal. Pl.'s Opening Br. 17-20 (doc. 15); see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with the record is a germane reason to discount third-party testimony). As addressed in section I, the ALJ also provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective symptom statements. The reasons and evidence cited by the ALJ in evaluating plaintiff's testimony is equally applicable to Cheri N.'s lay statements. See Molina, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the same evidence that the ALJ

referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (lay witness testimony may also be disregarded on same basis as the claimant's discredited subjective reports). As such, reversal is not warranted as to this issue.

### III. Medical Opinion Evidence

Plaintiff argues the ALJ improperly discredited the opinion of Dr. Quiring, as well as the opinion of Dr. Alvord, with which Mr. Hickey subsequently concurred.

#### A. Dr. Quiring

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other medical sources" can be used to determine the severity of the impairment and how it affects the claimant's ability to work. SSR 06-03p, available at 2006 WL2329939. To reject the opinion of an "other medical source," the ALJ must provide a germane reason supported by substantial evidence. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

In August 2016, plaintiff attended a one-time assessment with Mr. Quiring for ADHD. Tr. 708-14, 729-33. The narrative portion of Dr. Quiring's report stated in relevant part:

> [Plaintiff's] ADHD symptoms are most consistent with the predominantly inattentive type and he reportedly has outgrown some of his previous hyperactivity. Today, his motor behavior was lethargic. [His] scores on objective testing were mixed but provide some evidence of his impaired attention as indicated by his below normal limits functioning on a test of verbal story working memory and attention. In comparison, he was able to concentrate on a visual task similar to the type of video game activities that he spends much of his time participating in during the day. [Plaintiff] has impaired adaptive functioning and depends on significant support from his family in terms of his basic housing and nutritional needs; because he has been unable to maintain gainful employment, he is applying for disability benefits and this current assessment supports his disabled status for both his mental health and cognitive impairments involving ADHD.

Tr. 712. Following the assessment, Dr. Quiring wrote a letter to plaintiff's grandmother, which was essentially duplicative of the narrative portion of his report. Tr. 713-14.

Page 10 – OPINION AND ORDER

The ALJ rejected Dr. Quiring's opinion because it was "inconsistent with the remaining evidence as well as internally inconsistent with no clear or detailed explanation as to why [plaintiff's] adaptive functioning is so impaired," especially in light of plaintiff's "choice to stay in his room playing video games, watching television and smoking marijuana." Tr. 24. The ALJ also noted plaintiff's ADHD responded well to medication following Dr. Quiring's assessment. Tr. 25. Additionally, the ALJ found that Dr. Quiring's "conclusion that [plaintiff] is disabled is a determination limited to the Commissioner." Tr. 24.

An ALJ may disregard "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957. Inconsistency with the record is also a proper basis to reject a medical provider's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, contradiction between a medical provider's opinion and his treatment notes constitutes a legally sufficient reason to reject that opinion. Valentine, 574 F.3d at 692-93.

Here, Dr. Quiring's objective examination findings make clear that he was not assessing plaintiff for anything other than ADHD. Tr. 710. Nor is there any indication in his report that he reviewed plaintiff's records prior to completing this evaluation or otherwise obtained an accurate picture of plaintiff's functioning. Tr. 708-12. Finally, on two of the three objective tests administered by Dr. Quiring, plaintiff scored within normal limits. Tr. 711. On the third test, Dr. Quiring's notes reflect that plaintiff scored below the normal limit solely in regard to the "immediate recall portion." Id. As a result, any conclusion related to plaintiff's "adaptive functioning" or purported disability related thereto is not supported by Dr. Quiring's own findings. See generally Tr. 708-12; see also Tr. 713-14 (Dr. Quiring's subsequent letter indicating that his opinion concerning plaintiff's disability was based on his other "mental health symptoms").

Moreover, prior to Dr. Quiring's assessment, plaintiff was not receiving any treatment for or medication related to his ADHD. Tr. 745-46. Following this evaluation, plaintiff was prescribed Adderall, which he repeatedly described as beneficial to his focus and concentration (and, to some extent, his anxiety), without any adverse side-effects. Tr. 747-64. After March 2017, plaintiff switched to a different prescribing provider and there are no further details regarding the efficacy of Adderall, except for chart notes from April and September 2017 specifying that he was "[d]oing well on [his] current dose." Tr. 793, 800, 806; see also Tr. 767 (plaintiff's memory and attention/concentration were within normal limits in April 2017); Tr. 874 (Dr. Alvord indicating "stimulants are somewhat assistive regarding [plaintiff's] inattention"). Accordingly, the record does not reflect that plaintiff's ADHD was a significant barrier to employment and the ALJ's evaluation of Dr. Quiring's opinion is upheld.

### B.     Dr. Alvord and Mr. Hickey

At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. Bayliss, 427 F.3d at 1216 (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. Id.

In May 2018, Dr. Alvord conducted a psychological evaluation of plaintiff that included a review of his medical records, a clinical interview, and objective testing. Tr. 873. Based on this evaluation, Dr. Alvord's "Diagnostic Impressions" were as follows:

> [Plaintiff] presents as an individual who meets the criteria for Social Anxiety Disorder as well as Bipolar II. He is treated with a number of medications and has

>   been involved in therapy in the past. Despite treatment, his symptoms, especially involving anxiety, are still judged to fall within the moderate to severe range of impairment. He does also present with ADHD symptoms and continues to experience difficulty with attention and focus that is likely magnified by anxiety. It is probable that his complaints of fatigue are somewhat exacerbated by his current medication regime, although I suspect his functioning would be worse if he was not on the current medications. His prognosis is guarded to fair. He should be monitored closely for increasing suicidal ideation.

Tr. 877.

In a corresponding "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," Dr. Alvord checked boxes evincing that plaintiff was: moderately impaired in his ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with the public; and markedly impaired in his ability to interact appropriately with supervisors and coworkers, and respond appropriately to usual work situations and changes in routine work settings.[4] Tr. 879. The doctor indicated that these limitations first manifested in August 2013. Tr. 880. Dr. Alvord also opined that plaintiff's psychiatric problems would prevent him from being able to maintain a regular work schedule "3 or 4 days per month." Tr. 881.

Also in May 2018, Mr. Hickey completed a form at the request of plaintiff's attorney, in which he offered a "guarded" concurrence with Dr. Alvord's opinion, explaining: "I have only met with [plaintiff] on one occasion, so the majority of my opinion is based on chart review." Tr. 891.

The ALJ assigned "little weight" to Dr. Alvord's and Mr. Hickey's assessments because they were "not consistent with the remaining evidence." Tr. 26. Further, the ALJ found that Dr. Alvord's report was "internally inconsistent" since his check-box form was not accompanied by

---

[4] This form included five rankings: none, mild, moderate, marked, and extreme. Tr. 878. "Moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily," and "marked" is defined as a "serous limitation [that results in] a substantial loss in the ability to effectively function." Id.

Page 13 – OPINION AND ORDER

any narrative explanation regarding plaintiff's social limitations and level of absenteeism, and Mr. Hickey "admit[s] he has only seen [plaintiff] once." Tr. 25-26.

While, as denoted above, contradiction between a doctor's opinion and treatment notes or evaluation findings can constitute a legally sufficient reason, here substantial evidence does not support the ALJ's conclusion. In fact, the ALJ overlooked many salient aspects of Dr. Alvord's report that were indicative of mental impairment. Namely, Dr. Alvord observed plaintiff to be "withdrawn, lethargic, and slightly anxious during this encounter," with a "flat/anxious" affect. Tr. 875. He also found it "noteworthy that [plaintiff] lamented the fact that 'this is not what I want to be doing' (referring to apply[ing] for disability)." Tr. 874; see also Tr. 875 ("[v]alidity issues were not suspected"). Objective testing metrics reflected mildly impaired attention/concentration and a potential learning disorder. Tr. 876-77.

The evidence of record, including from Mr. Hickey, is wholly consistent with Dr. Alvord's conclusion that plaintiff struggled with significant and persistent social anxiety that would cause problems with attendance; interacting with coworkers, supervisors, and the public; and responding appropriately to usual work situations and changes in routine work settings. See, e.g., Tr. 326-336, 375-79, 536-708, 736-73; see also Tr. 776-78 (Mr. Hickey's chart notes from September 2017 documenting plaintiff's "crippling anxiety," reliance on "a lot of" medication, and inability to leave his bedroom most days).

Concerning the ALJ's remaining rationale, the fact that Dr. Alvord's check-box form was not accompanied by narrative descriptions is not persuasive in this context. Indeed, Dr. Alvord's check-box form was accompanied by his coterminous psychological evaluation, which provides support for his conclusions regarding plaintiff's functional limitations. As a result, the ALJ failed to provide a legally sufficient reason, support by substantial evidence, for rejecting both Dr.

Alvord's opinion and Mr. Hickey's concurrence therewith. See Daily v. Berryhill, 2018 WL 746397, *10 (E.D. Cal. Feb. 7, 2018) (although the ALJ may consider the nature and extent of the claimant's relationship with a provider, "the presence of a limited treatment relationship cannot alone constitute a legitimate reason for rejecting [that provider's] opinion") (collecting cases).

The ALJ therefore committed harmful error in weighing this evidence. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## IV.    RFC and Step Five Finding

Plaintiff asserts that the ALJ's RFC and step five finding are erroneous because they do not adequately account for the limitations described in his or his grandmother's testimony, or the medical opinions of Mr. Hickey and Drs. Quiring and Alvord.

This argument is partially well-taken. As specified above, the ALJ wrongfully discounted the opinions of Mr. Hickey and Dr. Alvord. Because the ALJ failed to account for the work-related limitations of function described by these sources in plaintiff's RFC, the ALJ erred in relying upon the VE's testimony at step five. See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (if a VE's "hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value") (citations and internal quotations omitted). Thus, the ALJ's ultimate decision is not supported by substantial evidence and remand is necessary.

## V.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is

appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly weigh the opinions of Mr. Hickey and Dr. Alvord. The record is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling impairments. On one hand, plaintiff repeatedly failed to follow his providers' recommendations, despite the fact that they indicated counseling and lifestyle changes were critical aspects of his treatment. In addition, although not dispositive, the Court notes that plaintiff engaged in activities in excess of his hearing testimony, at least during the earlier part of the adjudication period: he participated in romantic relationships and, at times, socialized with greater frequency. Tr. 329, 463, 538-39, 570, 658, 660-61, 675, 680, 690.

On the other hand, plaintiff consistently endorsed signficant anxiety, even with counseling and medication, despite some waxing and waning of symptoms. Furthermore, given that plaintiff explicitly denied "current or past abuse of alcohol or use of illicit substances," as well as any "legal difficulties past or present," during his evaluation with Dr. Alvord, it is unclear whether the doctor factored in plaintiff's daily marijuana usage in opining as to his work-related limitations. Tr. 875, 877, 880. This is significant for two reasons. First, Dr. Alvord's report represents the only medical opinion from a treating or examining acceptable medical source. Second, plaintiff is on myriad

other prescription medications, which he has a history of overusing and which Dr. Alvord indicated may have an adverse impact on his functional abilities. Tr. 877.

As such, further proceedings are required to resolve this case. See Treichler, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the remote alleged onset date, coupled with the complex and longstanding nature of both plaintiff's impairments and marijuana usage, consultation with a medical expert would be helpful. Therefore, upon remand, the ALJ must consult a medical expert and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 17th day of August, 2020.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge